No. 21-13092-CC

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

KEVIN MCCALL,
*Defendant/Appellant.*

_____

On Appeal from the United States District Court
for the Southern District of Florida
_____

INITIAL BRIEF OF APPELLANT
KEVIN MCCALL
_____

MICHAEL CARUSO
Federal Public Defender
ANSHU BUDHRANI
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Telephone No. (305) 530-7000

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL CASE)

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

## United States of America v. Kevin McCall
## Case No. 21-13092-CC

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Altman, Hon. Roy K., United States District Judge

Budhrani, Anshu, Assistant Federal Public Defender

Caruso, Michael, Federal Public Defender

Fajardo Orshan, Ariana, Former United States Attorney

Gonzalez, Juan Antonio, United States Attorney

Hoffman, Andrea G., Assistant United States Attorney

Hunt, Hon. Patrick M., United States Magistrate Judge

Jones, Trevor Christopher, Assistant United States Attorney

McCall, Kevin A., Defendant/Appellant

Mulvihill, Thomas J., Assistant United States Attorney

Smachetti, Emily M., Assistant United States Attorney

Snow, Hon. Lurana S., United States Magistrate Judge

Strauss, Hon. Jared M., United States Magistrate Judge

Strauss, Scott Ryan, Assistant United States Attorney

Tobin Rubio, Lisa, Assistant United States Attorney

Valle, Hon. Alicia O., United States Magistrate Judge

Wilcox, Daryl E., Assistant Federal Public Defender

Williams, Hon. Kathleen M., United States District Judge


*/s/ Anshu Budhrani*
Anshu Budhrani

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents important questions regarding the particularity required of search warrants for electronic storage media, such as the iCloud. It is a question of growing importance, as more and more personal data is now being stored in the Cloud. As such, Mr. McCall respectfully submits that oral argument is necessary to the just resolution of this appeal, and will significantly enhance the decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF CITATIONS ............................................................iv

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUE ..................................................2

STATEMENT OF THE CASE ...............................................3

I.    Course of Proceedings, Facts, and Disposition Below....................3

    A.  Course of Proceedings and Disposition Below ..........................3

    B.  Facts..........................................................................5

II.   Standard of Review .......................................................10

SUMMARY OF THE ARGUMENT ........................................................12

ARGUMENT AND CITATIONS TO AUTHORITY ................................15

I.    The District Court Erroneously Applied the Good-Faith Exception To the Exclusionary Rule to Salvage the Searches Conducted Here................................................................15

    A.    The good-faith exception to the exclusionary rule does not apply because the affidavit underlying the Apple

iCloud search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable ............................................................ 16

B.    The good-faith exception to the exclusionary rule also does not apply because the iCloud search warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid .............................. 20

C.    In any case, even if the above exceptions to the *Leon* good-faith exception to the exclusionary rule do not apply, law enforcement officers' reliance upon the search warrant was objectively unreasonable .................................. 23

CONCLUSION ............................................................................. 26

CERTIFICATE OF COMPLIANCE ......................................................... 27

CERTIFICATE OF SERVICE ................................................................ 28

# TABLE OF CITATIONS

**CASES**

*Bigford v. Taylor,*

    834 F.2d 1213 (5th Cir. 1988) ............................................................. 19

*Brinegar v. United States,*

    338 U.S. 160 (1949) .......................................................................... 24

*Davis v. United States,*

    564 U.S. 229 (2011) .......................................................................... 15

*Groh v. Ramirez,*

    540 U.S. 551 (2004) ...................................................................... 23, 24

*Harris v. United States,*

    331 U.S. 145 (1947) .......................................................................... 25

*Nathanson v. United States,*

    290 U.S. 41 (1933) ............................................................................ 24

*United States v. Blake,*

    868 F.3d 960 (11th Cir. 2017) ...................................................... 20, 21

*United States v. Chadwick,*

    433 U.S. 1 (1977), abrogated on other grounds,

    *California v. Acevedo*, 500 U.S. 565 (1991) ....................................... 20

*United States v. Griffith,*

    867 F.3d 1265 (D.C. Cir. 2017) ......................................................... 20

*United States v. Leon,*

    468 U.S. 897, 922 (1984) ...................................................... 15, 23, 24

*United States v. Martin,*

    297 F.3d 1308 (11th Cir. 2002) ............................................. 11, 16, 17

*United States v. Nunez,*

    455 F.3d 1223 (11th Cir. 2006) ......................................................... 10

## STATUTES

18 U.S.C. § 3231 ....................................................................................... 1

18 U.S.C. § 922(g)(1) ............................................................................. 3, 4

28 U.S.C. § 1291 ....................................................................................... 1

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend IV ............................................................................... 20

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, because the defendant was charged with an offense against the laws of the United States.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which confers jurisdiction on the courts of appeals from final decisions of the district courts.  This appeal was timely filed on September 10, 2021 (DE 82) from the final judgment entered on September 1, 2021 (DE 81), disposing of all claims between the parties to this appeal.

## STATEMENT OF THE ISSUE

I.    Whether the district court erred in denying Mr. McCall's motion
       to suppress where the court found the search warrant at issue to
       be violative of the Fourth Amendment, but refused to apply the
       exclusionary rule on account of good faith.

## STATEMENT OF THE CASE

### I.    Course of Proceedings, Facts, and Disposition Below

#### A. Course of Proceedings and Disposition Below

In June 2020, Kevin McCall was charged—via criminal complaint—as a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). (DE 1.)

On September 8, 2020, Mr. McCall filed a motion to suppress the evidence seized from his iCloud account—photographs that formed the basis of the charges against him.  (DE 18.)  After holding an evidentiary hearing, and listening to the testimony of Detective Keith Rosen of the Broward Sheriff's Office ("BSO"), James KempVanEe of the Digital Forensics Unit at BSO, and expert witness Carter Conrad—as well as additional argument, both oral and written, from both sides—the court granted in part and denied in part Mr. McCall's motion to suppress.  (DE 93; DE 94.)   While the district court found the warrant to be constitutionally deficient (DE 94:6–7), it concluded that the "good faith exception would redeem the warrant" and "salvage[d] the search here." (DE 94:8, 10.)

In the interim, a federal grand jury sitting in the Southern District of Florida returned a two-count indictment against Mr. McCall, charging

him with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). (DE 34.) Mr. McCall entered a conditional plea of guilty to both counts of the indictment. (DE 72.) The plea agreement made clear that:

> The United States consents to [Mr. McCall's] entry of a conditional plea of guilty to the two-count Indictment, which charges [Mr. McCall] with two counts of Possession of a Firearm by a Convicted Felon, in violation of Title 18 United States Code, Section 922(g)(1), and [Mr. McCall's] reservation of the right to seek appellate court review of the district court's denial of the motion to suppress physical evidence on the grounds that the good-faith exception to the exclusionary rule cured any violation of [Mr. McCall's] Fourth Amendment right to be free from unreasonable searches and seizures.

(DE 72:1.)

At the video sentencing hearing on August 24, 2021, the district court sentenced Mr. McCall to a term of imprisonment of 27 months, followed by 3 years of supervised release. (DE 97:12.) Mr. McCall timely filed a notice of appeal (DE 82), and is currently serving his term of supervised release.

4

## B. Facts

In the early morning hours of April 11, 2020—around midnight—Kevin McCall was with friends—Johnny Zanders, Terry Herbert, Edward Russell, and Ferris Phillips—playing a game of Texas hold'em poker. (DE 20-3:10.) The friends had gathered after attending Ferris Phillips's father's funeral earlier that day. (DE 93:44–45.) As the poker game progressed, Mr. McCall began to lose a large amount of money, which lead to animosity and friction among the players. (DE 20-3:10.) Mr. McCall borrowed $1000 from another player in order to continue playing, but was increasingly frustrated and upset at how the game was progressing "and made threats to do something about it." (DE 20-3:10.)

The other players reported seeing Mr. McCall using his cell phone as the night progressed and Mr. McCall's frustrations increased: Johnny Zanders reported that Mr. McCall was "frantically using his cell phone to make calls/text unknown persons"; Edward Russell noted, "McCall was receiving multiple calls on his cell phone"; and Ferris Phillips observed Mr. McCall "receive[ ] a phone call and step[ ] outside." (DE 20-3:10–11.) A short while later, Mr. McCall stood up, stated he needed to take care of something, and left the house. (DE 20-3:10.)

5

A few minutes later, there was a knock at the door, but nobody could be seen outside. (DE 20-3:10–11.) Terry Herbert tapped on the window from inside the house and said, "show yourself," prompting Mr. McCall to step in front of the window to show that it was him at the door. (DE 20-3:10.) As soon as Terry Herbert opened the door, however, two black males wearing masks—one carrying a rifle and the other carrying a semi-automatic handgun—stormed the house and ordered everyone to the ground. The masked men fired two rounds, striking Terry Herbert on his left foot and right shin. (DE 20-3:9–10.) They also shot at Edward Russell, causing a minor graze wound to his right lower leg. (DE 20-3:10.) Johnny Zanders and Ferris Phillips retreated into the bedroom, and in so doing, Ferris Phillips fired his .380 Kel Tec handgun in the direction of the masked men. (DE 20-3:10.) The masked men got away with cash and multiple Apple iPhones. No one believed that Mr. McCall was either of the two masked men, including Detective Rosen. (DE 93:21 ("[W]e do not believe that Mr. McCall was the shooter . . . ."); DE 93:23 ("[W]e did not believe Mr. McCall to be one of the shooters or in possession of a firearm.").)

When law enforcement arrived at the home, they processed the scene and sent multiple shell casings and spent projectiles to BSO for testing. (DE 20-3:11.) Then, on April 14, 2020, law enforcement arrested Mr. McCall for two counts of attempted felony murder and four counts of robbery with a firearm. (DE 73:1.) BSO Detective Rosen noted in the arrest affidavit supporting his application for an arrest warrant that he had "probable cause to believe Kevin Antwon McCall was angry about losing money during the poker game and called two people to respond to the listed location to commit a home invasion robbery with a firearm." (DE 20-1:4.)

After Mr. McCall was arrested, Detective Rosen applied for and received a separate search warrant for Mr. McCall's red Apple iPhone, which was then already in the custody of BSO. (DE 20-2.) Detective Rosen testified that he did so "to see who [Mr. McCall] was in communication with prior to[,] during[,] and after the events." (DE 93:17.) He acknowledged that he did not believe that Mr. McCall had pre-planned the robbery prior to when it occurred—the early morning hours of April 11, 2020. (*Id.* at 21.) The warrant, however, sought the

entire contents of the iPhone, unbounded by any restrictions as to type of data or date. (DE 20-2:2.)

The warrant to search Mr. McCall's red Apple iPhone was signed on April 15, 2020, but when officers attempted to execute it, they were mostly unsuccessful because the phone was locked with a six-digit passcode. (DE 20-2:3; DE 93:22; DE 20-3:12.) As a result, BSO could obtain only a "limited extraction," comprised of, among other information, the phone number, the iCloud account associated with the phone—happyday1985kevin@icloud.com—and the date and time of the last iCloud backup—April 10, 2020 at 10:30:33AM UTC, which is approximately 6:30AM EST. (DE 93:22; DE 20-3:12–13.)

With that limited information in hand, Detective Rosen then applied for and received a search warrant for the entire contents of Mr. McCall's iCloud account. (DE 20-3; DE 93:59–60.) That warrant sought the entirety of Mr. McCall's iCloud account—from account creation to present—and authorized law enforcement to rummage through all data, including "iCloud backups on the Cloud to include but not limited to Apps that have been purchased and method of payment"; "Photo Stream records"; and "Backups to include but not limited to full, unencrypted,

non-password restricted backups of *any and all Apple devices* stored on the Cloud." (DE 20-3:3–4 (emphasis added).) Detective Rosen did so even though he acknowledged that the text messages and calls Mr. McCall had been seen making during the poker game could not have been a part of the data sought from the iCloud because the iCloud account "was [last] backed up prior to those messages being sent. They would have been in the cell phone but not the iCloud account." (DE 93:37.)

A month or so later, BSO received the requested iCloud data from Apple. (DE 93:33.) Detective Rosen sent the data to Mr. KempVanEe for review, along with the search warrant and the attachments. (DE 93:33.) Though Mr. KempVanEe did not come across anything relevant to the investigation surrounding the home invasion robbery, he did "stumble[ ]" across "pictures and videos of Mr. McCall waiving [sic] around a firearm." (DE 93:33, 42.) More specifically, an image from February 27, 2020 of Mr. McCall physically possessing a Sig Sauer Model P365, 9 millimeter semi-automatic pistol, and another image from March 3, 2020 of Mr. McCall physically possessing a Ruger Model SRC9, 9 millimeter semi-automatic pistol. (DE 73:2.) Mr. KempVanEe noted that "he was not sure whether Mr. McCall was a convicted felon . . . [and] thought that

9

might be something [Detective Rosen] may want to look into in addition to [his] primary investigation." (DE 93:33–34.) Mr. KemoVanEe explicitly acknowledged, however, that the photos and videos had nothing to do with the stated purpose of the search—the discovery of "communications with co-conspirators before and after the home invasion robbery." (DE 93:68.)

As a result, Detective Rosen began investigating an entirely separate crime. (DE 93:43.) He reached out to his partner, who then reached out to a federal agent at the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (DE 93:43.) ATF took over, and Mr. McCall was eventually charged with being a felon in possession of firearms, based solely upon the images recovered from the search of his iCloud account.

## II. Standard of Review

With regard to a motion to suppress, this Court reviews the district court's factual findings for clear error, and its legal conclusions *de novo*. *United States v. Nunez*, 455 F.3d 1223, 1225 (11th Cir. 2006). More specifically, this Court "review[s] *de novo* the legal issue as to whether the *Leon* good faith exception to the exclusionary rule applies to this

10

search, whereas the underlying facts upon which that determination is based are binding on appeal unless clearly erroneous." *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (internal quotation marks and citation omitted).

## SUMMARY OF THE ARGUMENT

Kevin McCall was suspected of coordinating an armed home invasion robbery in the very early morning hours of April 11, 2020. He was playing poker with friends at a friend's house, and became increasingly frustrated that he was losing large sums of money. He was seen on his cellphone—making and receiving calls and sending and receiving text messages—as the poker game progressed. He eventually stepped outside of the house to take care of something. Then, within minutes, there was a knock on the door. When the occupants of the home opened the door, two armed, masked men stormed the residence and robbed it, firing their guns in the process.

Mr. McCall was arrested on suspicion that he had orchestrated the home invasion robbery that night because he was mad about losing money at the poker game. Law enforcement officers secured a search warrant for Mr. McCall's red Apple iPhone as well as his iCloud account, unbounded by any limitations as to time or subject matter. They were afforded carte blanche to engage in an exploratory rummaging of the contents of Mr. McCall's entire life based upon the limited probable cause they had to believe that Mr. McCall had orchestrated a spur-of-the-

12

moment home invasion robbery because he was frustrated and angry about losing money during a poker game. While the district court found the iCloud search warrant to be constitutionally infirm, it upheld the search warrant after applying the good-faith exception to the exclusionary rule. Doing so, however, was erroneous.

The fact that the officers accomplished their search by means of a warrant does not end the Fourth Amendment analysis. The constitutional requirements of particularity and probable cause were designed to prohibit invasive searches of private papers and effects based on an officer's hunch, even when the officers possessed a warrant. Moreover, the good-faith exception to the exclusionary rule has never existed without limiting principles. Two apply here—an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and a warrant so facially deficient that the executing officers could not reasonably presume it to be valid—each independently sufficient to render the good-faith exception inapplicable.

The scope of a search must closely adhere to the probable cause showing, lest authority to search a device for evidence of one crime mutate into authority to search the entirety of the device for evidence of

any crime—a prohibited general search. That is precisely what happened here—officers rummaged through the entire contents of Mr. McCall's iCloud account and discovered evidence completely unrelated to the crime being investigated. This unwarranted and unprecedented expansion of the government's power to pry into a suspect's private life cannot be countenanced.

## ARGUMENT AND CITATIONS TO AUTHORITY

**I.    THE DISTRICT COURT ERRONEOUSLY APPLIED THE GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE TO SALVAGE THE SEARCHES CONDUCTED HERE**

The exclusionary rule prohibits the introduction of evidence obtained in violation of the Fourth Amendment in order to "compel respect" for the important rights guaranteed by the Fourth Amendment. *Davis v. United States*, 564 U.S. 229, 236 (2011).   The good-faith exception to the exclusionary rule is a "judicially created exception to this judicially created rule."  *Id.* at 248.  In *United States v. Leon*, the Supreme Court recognized a good-faith exception to the exclusionary rule, under which evidence obtained by an officer who acts in objectively reasonable reliance on a search warrant will not be suppressed, even if the warrant is later deemed invalid.  468 U.S. 897, 922 (1984).

Importantly, however, the Supreme Court in *Leon* enumerated four situations that would remove a warrant from the good-faith exception's protection, two of which are relevant here: (1) "where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (2) "where, depending upon the circumstances of the particular case, a

15

warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Martin*, 297 F.3d at 1313 (internal quotation marks omitted).

Here, both situations existed. The warrant and its supporting affidavit were so deficient that no reasonable officer could have presumed them to be valid. As such, the good-faith exception to the exclusionary rule should not have applied. And, in any case, any reliance by law enforcement officers on the search warrant at issue was objectively unreasonable. The evidence recovered as a result should have been suppressed.

## A. The good-faith exception to the exclusionary rule does not apply because the affidavit underlying the Apple iCloud search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable

To determine whether the affidavit underlying a search warrant was so lacking in probable cause as to render official belief in its existence entirely unreasonable, the Court must "look to the face of the particular affidavit at hand." *Martin*, 297 F.3d at 1313. "It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a

16

conclusion that evidence or contraband will probably be found at the premises to be searched." *Id.* at 1314 (quotation marks omitted). The affidavit "must contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." *Id.* (quotation marks omitted). More specifically, "the affidavit should establish a connection between the defendant and the [location] to be searched and a link between the [location] and any criminal activity." *Id.* There must be a specific factual basis in the affidavit that connects the information requested to the crimes charged.

Here, Detective Rosen's affidavit in support of the iCloud search warrant sought approval to search virtually every piece of data in Mr. McCall's iCloud account—all subscriber information, app purchases, photo stream records, bookmarks, backups from any and all Apple devices stored on the Cloud, all emails, and all contact and buddy lists. (DE 20-3:8–9.) The affidavit, however, contained no indicia of probable cause that any evidence of the home invasion robbery being investigated would be found in the iCloud account, let alone in any of the multiple categories of data sought, including photos and videos taken months before.

17

Per the facts alleged in the affidavit, Mr. McCall was playing an impromptu game of poker with his friends, with whom he had gathered after the funeral of one of his friend's fathers. He had lost a large sum of money, and was described as being "frustrated," "upset," and "confrontational." (DE 20-3:10.) He was seen by multiple of his friends "frantically" making and receiving phone calls, as well as sending and receiving text messages. (*Id.*) He then abruptly "stood up, stated he needed to take care of something, and left the residence." (*Id.*) A few minutes later, there was a knock at the door of the house Mr. McCall had just left, and when his friends opened the door, two masked men with firearms—neither one of whom was Mr. McCall—"stormed" the home, ordered everyone to the ground, and got away with phones and cash.

There were no facts in the probable cause affidavit to indicate that Mr. McCall planned this home invasion robbery prior to the night it occurred. Detective Rosen admitted as much when directly asked if there was any evidence that Mr. McCall planned the home invasion robbery in advance. (DE 93:20–21; DE 94:3.) And Mr. McCall's cellphone—which he was using in the early morning hours of April 11, 2020 to make and receive phone calls and send and receive text messages—last backed up

to his iCloud account on April 10, 2020 at 6:30AM, many hours before the crime being investigated. (DE 20-3:13.) Detective Rosen was aware of this fact when he swore out his affidavit in support of the iCloud account search warrant. (DE 20-3:13.) As such, the affidavit failed to establish any link between Mr. McCall's iCloud account and the criminal activity being investigated—the spur-of-the-moment home invasion robbery. The affidavit contained zero facts to justify the search of an account that did not contain any of the calls and texts the witnesses interviewed in the affidavit alleged Mr. McCall had made minutes before the home invasion robbery occurred.

It was entirely unreasonable for Detective Rosen to believe that what he wrote in the affidavit was sufficient to support a finding of probable cause to search *the entirety of* Mr. McCall's iCloud account, let alone just the photos and videos. This is especially so given his knowledge of the fact that Mr. McCall's iPhone last backed up to his iCloud account the day before the home invasion robbery occurred. *See Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (explaining that while officers are permitted to rely on training and experience when

attesting that probable cause exists, they must not turn a blind eye to details that do not support probable cause for the particular crime).

The affidavit here did not contain any indicia of probable cause to enable a reasonable officer to execute the warrant thinking it was valid, and therefore, the warrant cannot be saved by the good-faith exception. *See United States v. Griffith*, 867 F.3d 1265, 1278 (D.C. Cir. 2017) (finding that the affidavit's failings as to probable cause brought the warrant beyond the good-faith exception's reach).

## B. The good-faith exception to the exclusionary rule also does not apply because the iCloud search warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid

A search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. The goal is to prevent "rummaging" through a person's belongings by requiring warrants to include a particular description of the things to be seized. *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017). A particular warrant "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433

U.S. 1, 9 (1977), abrogated on other grounds, *California v. Acevedo*, 500 U.S. 565 (1991).

In *Blake*, the Court explored the contours of the particularity requirement when assessing a tailored warrant requiring Microsoft to turn over all emails containing potentially incriminating evidence versus warrants requiring Facebook to disclose "virtually every kind of data that could be found in a social media account." *Blake*, 868 F.3d at 973–74. While the Court found the Microsoft warrant to be constitutional—it "did not seek all emails in those two email accounts; instead, it was limited to certain categories of emails in them that were linked to the . . . charges," *id.* at 966—it concluded that the Facebook warrants were unconstitutional because they could have been more "limited" in the data they sought from Facebook, both in subject matter and date. *Id.* at 974. The Court's comparison of the warrants—one which passed constitutional muster and one which did not—is instructive to the good-faith analysis in this case.

Here, much like the Facebook warrant at issue in *Blake*, the iCloud warrant requested every piece of data that could be found in an iCloud account, unbounded by subject matter or date. That is, the entire

contents of Mr. McCall's iCloud account, including "[b]ackups . . . of any and all Apple devices stored on the Cloud." (DE 20-3:4.) Arguably, the iCloud warrant here was even more egregious than the one found violative of the Constitution in *Blake* because it sought every piece of data backed up to the Cloud by any cloud-connected Apple device owned by Mr. McCall—including, but not limited to, Mr. McCall's red Apple iPhone that was the subject of the investigation. In essence, the Apple iCloud search warrant gave law enforcement access to all data from every cloud-connected device in Mr. McCall's possession, whether or not those devices had any connection to the spontaneous home invasion robbery being investigated.

It cannot be said that the good-faith exception salvages this facially deficient, grossly unparticularized warrant. The warrant sought all data stored in the iCloud—subscriber information, mail logs, emails, photos, videos, contacts, calendars, bookmarks, iOS device backups, Find My iPhone data, all text messages, Instant messages, voicemails, documents, location data, all iCloud backups from any devices stored on the Cloud, FaceTime logs, and iTunes account information—unbounded by any date restrictions. (DE 20-3.) Detective Rosen prepared this utterly facially

deficient warrant, which sought every kind of data from a source that could never have contained the precise calls and texts law enforcement was looking for because the last backup of data from the iPhone to the iCloud occurred before the calls and texts in question were made/sent. Additionally, the warrant sought categories of information outside of calls and texts that had no connection to the crimes being investigated.

The iCloud search warrant, which essentially provided for the indiscriminate rummaging through the entire contents of Mr. McCall's iCloud account, was "so facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." *Leon*, 468 U.S. at 923. Therefore, the *Leon* good-faith exception to the exclusionary rule is inapplicable, and the photographs and videos that formed the basis for Mr. McCall's prosecution as a felon-in-possession should have been suppressed.

**C. In any case, even if the above exceptions to the *Leon* good-faith exception to the exclusionary rule do not apply, law enforcement officers' reliance upon the search warrant was objectively unreasonable**

"It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). The good-faith exception to the

23

exclusionary rule requires courts to consider whether a reasonably well-trained officer would know that the warrant was illegal despite the magistrate's authorization. *Leon*, 468 U.S. at 922 n.23. The critical question is whether the officers' good faith reliance on the defective warrant was objectively reasonable. Here, the answer is unequivocally no.

In finding that the good-faith exception saved the warrant, the district court found persuasive that the warrants were "signed by two different Judges." (DE 94:8.) But, as the Supreme Court noted in *Groh*, "because petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the [Judge's] assurance that the warrant contained an adequate description of the things to be seized and was therefore valid." 540 U.S. at 564.

The Supreme Court has observed: "[M]any situations which confront officers in the course of executing their duties are more or less ambiguous, [and] room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). And further, "[m]ere affirmance of belief

24

or suspicion is not enough." *Nathanson v. United States*, 290 U.S. 41, 47 (1933). The facts here lead to the conclusion that Mr. McCall potentially participated in a spur-of-the-moment, unplanned home invasion robbery; the facts do not lead to a sensible conclusion that Mr. McCall orchestrated and pre-planned a grand scheme to rob his friends' home days and months prior. Under these facts, reasonably well-trained officers would have been aware that searching the entirety of Mr. McCall's iCloud account—which did not contain any of the phone calls or text messages sent and received by Mr. McCall in the minutes leading up to the home invasion robbery—was unsupported by probable cause, despite the judge's approval. Consequently, it was error to afford the search the protection of the good-faith exception to the exclusionary rule.

* * * *

Justice Frankfurter once observed that, though "criminals have few friends," the encroachment on the Fourth Amendment "reach[es] far beyond the thief or the blackmarketeer." *Harris v. United States*, 331 U.S. 145, 156 (1947) (Frankfurter, J., dissenting). The encroachment in this case could reach anyone with an electronic device that backs up to the Cloud. If the Court fails to persist in its commitment to the Fourth

25

Amendment's particularity requirement here, it will throw the door wide open to unrestricted searches of any and all personal electronic devices and all of the data they have ever contained.  Such unrestricted searches are many times more invasive than the rifling of one's home, and cannot be sanctioned by this Court.

## CONCLUSION

For the foregoing reasons, Mr. McCall respectfully requests that this Court reverse the district court's denial of his motion to suppress and vacate his conviction and sentence.


Respectfully submitted,

MICHAEL CARUSO
Federal Public Defender

*/s/ Anshu Budhrani*
ANSHU BUDHRANI
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 530-7000

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 4,570 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

*/s/ Anshu Budhrani*
Anshu Budhrani

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 25th day of April 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and sent seven copies to the Clerk of the Court via third-party commercial carrier for delivery within three days.  I also certify that the foregoing document is being served this day via CM/ECF on Lisa Tobin Rubio, Assistant United States Attorney 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Anshu Budhrani*
Anshu Budhrani